**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Eva Thomas, Esq. (*pro hac vice* to be submitted)
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0217

*Proposed Counsel to the Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>288 4TH LLC,<br><br>    Debtor. | Chapter 11<br><br>Case No. 24-43626-ess |
| 288 4TH LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>HAIM KAHAN, COHEN TAUBER SPIEVACK & WAGNER P.C., and PROGRESSIVE REAL ESTATE AGENCY LLC,<br><br>    Defendants. | Adv. P. No. 24-01087<br><br>**AMENDED COMPLAINT** |

288 4th LLC, debtor and debtor-in-possession in the above-captioned bankruptcy proceeding (the "***Debtor***" or the "***Plaintiff***"), and as plaintiff in the above-captioned adversary proceeding, hereby alleges, upon its own knowledge or upon information and belief, as follows:

1

## PRELIMINARY STATEMENT

1. This is an adversary proceeding seeking injunctive relief against each of the Defendants with regard to $1.6 million in cash that belongs to the Debtor and its estate.

2. Defendant Haim Kahan ("**Kahan**") has now filed three actions in the Supreme Court for the State of New York, County of Kings (the "**State Court**") in order to obtain access to these funds.

3. The $1.6 million belongs to the Debtor and no one else and thus is property of the Debtor's estate pursuant to Bankruptcy Code section 541. That fact is acknowledged by Kahan in his Affirmation filed in the State Court wherein Kahan states:

> On or about August 3, 2022, Crown 286 4th Avenue LLC ("Crown") and 2123 Denton LLC ("Denton," with Crown, "Sellers") entered into a purchase and sale agreement with 288 4th LLC ("288 4th"), as purchaser, for the sale of real property located at 286-290 4th Avenue and 21-23 Denton Place, both locations in Brooklyn . . . *The transaction ultimately did not close, and one of the Sellers returned $1.6 million to 288 4th.*

*See* Kahan Affirmation annexed hereto as **Exhibit A** (emphasis added).

4. Such fact is also acknowledged in a Termination Agreement dated November 4, 2022 (the "**Termination Agreement**") signed by Defendant Kahan. *See* Termination Agreement attached as **Exhibit B**. Indeed, the first Whereas clause provides as follows: "WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**")." Termination Agreement at 1st Whereas Clause. Purchaser is defined in the Termination Agreement as the Debtor. Indeed, the Termination Agreement provides in the Preamble as follows: "**288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304,

Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**")". Termination Agreement at Preamble.

5. All Defendants have been advised of the automatic stay.

6. Upon information and belief, the $1.6 million of Debtor's property has been wrongfully transferred from Defendant Cohen Tauber Spievack & Wagner PC's ("*Cohen Tauber*") escrow account to Defendant Progressive Real Estate Agency LLC ("*Progressive*") via an ACH transfer.

7. Upon information and belief, the principal of Defendant Progressive is related to or otherwise close with Defendant Kahan.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(7), and Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

9. The Debtor's Chapter 11 case No. 24-43626-ess is currently pending in the United States Bankruptcy Court for the Eastern District of New York.

10. Venue is proper in this district under 28 U.S.C. § 1409(a), in that the bankruptcy case is pending in this district.

## PARTIES

11. Plaintiff is the Debtor in the bankruptcy case.

12. Upon information and belief, defendant Haim Kahan is an individual who resides in Kings County, New York.

13. Defendant Cohen Tauber is a New York law firm located in Manhattan, New York.

14. Upon information and belief, Progressive Real Estate Agency LLC is a New Jersey limited liability company located at 212 2nd Street, STE 405, Lakewood, NJ, 08701.

## REQUESTED RELIEF AND THE BASES THEREFOR

15. Debtor has commenced this adversary proceeding in accordance with Bankruptcy Rule 7001.

16. The statutory bases for relief requested herein are 11 U.S.C. §§ 105(a), 541, and 542 of the Bankruptcy Code, NYDCL § 276, NYDCL § 276, NYDCL § 276-a.

17. This adversary proceeding seeks entry of an Order

   a. directing Defendant Haim Kahan to immediately cease and desist from any and all action to obtain the $1.6 million,

   b. enjoining Progressive from turning over the $1.6 million to Kahan or any other party absent further order of the Court,

   c. entering a declaratory judgement that the $1.6 million is property of the Debtor's estate,

   d. requiring that such $1.6 million be immediately turned over to the Debtor;

   e. granting attorney's fees and costs, and

   f. granting such other and further relief as the Court deems just and proper.

## FACTUAL BACKGROUND

**A.  General Background**

18. On September 2, 2024, (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") with the United States Bankruptcy Court for the Eastern District of New York (the "***Bankruptcy Court***").

19. The Debtor continues in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

20. No trustee, examiner, or statutory committee has been appointed.

21. The Debtor is 100% owned by Perl Weisz. A copy of the Operating Agreement is annexed hereto as **Exhibit C**.

B. **Weisz Family's Business Dealings with Chaim Kahan**

22. The Weisz family has significant tortured history with Kahan, and engaged in four separate real estate deals with Kahan throughout 2022.

23. Yecheskel Weisz was introduced to Kahan as someone who claimed to have significant cash reserves to invest in real estate. Based on that assumption and some due diligence, the Weisz's engaged in business transactions with Kahan.

24. Despite Kahan's holding himself out as a real estate expert and closer, each of the deals that the Weisz's worked with Kahan on fell apart. Importantly, the deals fell apart based on Kahan failing to provide the necessary funds or otherwise satisfy his obligations at the moment when those funds were required to close the transaction.

25. By way of example, in one of the deals worked on with Kahan, that deal fell apart when Kahan failed to attend a "time of the essence" closing, which resulted in the release of a $1 million deposit for an $11 million property. As a result of that deal falling apart, Kahan commenced an action in State court (*525 Park Williamsburg LLC v. 525 Park LLC*, Index No. 521411/2023 – NYS Supreme Court, Kings County) seeking specific performance from the seller. Based on Kahan's action, that case was dismissed. Ultimately, 525 Park Williamsburg LLC (Kahan's entity) ended up in bankruptcy court and is being heard by Judge Stong in the chapter 11 case titled *In re 525 Park Williamsburg LLC*, Case No. 24-40228-ess.

26. Other deals between Kahan and the Weisz's ended in a similar fashion where the parties would get close to closing and Kahan would default on his obligations. Simply stated, such is Kahan's *modis operandi*.

27. The issues at bar here are no different and fall squarely within Kahan's behavioral pattern.

**C.     The Origin of the $1.6 Million at Issue**

28. This case is all about recovering the $1.6 million of the Debtor property that was wrongfully transferred.

29. That $1.6 million arose from a $2 million deposit that was posted by the Debtor for the purchase of a particular property. Indeed, pursuant to a certain purchase agreement dated as of November 4, 2022 between Crown 286 4th LLC and 2123 Denton LLC, as sellers, and 288 4th LLC (the Debtor here) as buyer (the "***Purchase Agreement***") pursuant to which the Debtor was to purchase the property located at 288 4th Avenue, Brooklyn, New York (the "***Property***"), the Debtor posted a $2 million contract deposit.

30. Because Kahan failed to live up to his obligations, that deal fell apart and the Debtor was at risk of losing its full $ 2 million deposit.

31. In an effort to avoid a full loss, the Debtor and Crown 286 4th LLC and 2123 Denton LLC (Sellers) ultimately entered into an agreement by which the Debtor would forfeit $400,000 as opposed to the full $2 million. This agreement was memorialized in the Termination Agreement.

32. The returned funds are the subject of this Adversary Proceeding.

**D.     Kahan's Relationship to the Debtor**

33. As noted above, the Debtor is solely owned by Perl Weisz. Kahan has no equity interest in the Debtor.

34. What Kahan and the Debtor did agree to is that if the deal to purchase the Property closed and was ultimately flipped for a profit, such profit would be split 50/50. Such deal was memorialized in a certain emails, annexed hereto as **Exhibit D**.

35. While it is true that Kahan did provide the Debtor with the $2 million deposit, such monies always belonged to the Debtor. That $2 million was the price of admission for Kahan to participate in the ultimate upside via the 50/50 flip.

36. Kahan's failure to provide remaining funds for closing as he was obligated to ultimately led to the demise of this deal.

37. As a result, Debtor lost the deal, as well as the ability to flip it, and the contract was terminated, resulting in a Termination Agreement. *See* Termination Agreement attached as **Exhibit B**.

38. Pursuant to that Termination Agreement, the seller agreed to release all claims and return $1.6 million to Debtor, and retain $400,000. *See id*.

39. Following the entry of the Termination Agreement, a dispute arose between the Weisz family and Kahan as to ownership of the $1.6 million returned deposit.

40. While the dispute was ongoing, both the Weisz family and Kahan agreed that the money was to be placed in escrow with Riverside Abstract Inc. ("***Riverside***"), with an agreement that it would not be released until both parties agree or a rabbinical court decides its fate.

41. The money remained with Riverside for two years without any agreement or determination as to the money.

42. Putting aside the Weisz family and Kahan dispute for the moment, it is important to note that the $1.6 million belongs to neither the Weisz family nor Kahan. It belongs to the Debtor and its estate – plain and simple. In fact, the Termination Agreement clearly states that the $1.6 million is property of the Debtor. Indeed, the first Whereas clause provides as follows: "

> WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**")

the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**").

Termination Agreement at 1st Whereas Clause. Purchaser is defined in the Termination Agreement as the Debtor. Indeed, the Termination Agreement provides in the Preamble as follows: "**288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304, Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**")". Termination Agreement at Preamble.

43. As further evidence that the $1.6 million belongs to the Debtor is provided for further in the Termination Agreement as follows: "The Parties mutually authorize and direct the Escrow Agent to disburse $400,000.00 of the Down Payment to Sellers by wire transfer to such Parties in accordance with wire instructions set forth hereinbelow and $1,600,000 to Purchaser, by wire transfer in accordance with wire instructions to be provided to the Escrow Agent by the Purchaser." Termination Agreement at § 2.

44. The Weisz family has recognized that the $1.6 million belongs to the Debtor. Kahan, however, refused to accept that fact despite the overwhelming documentary evidence supporting such ownership by the Debtor.

**E.** **Kahan Initiates Lawsuit after Lawsuit to Wrongfully Obtain the $1.6 million**

*(i)* *The First Action*

45. On July 19, 2024, Kahan commenced its first action in the State Court titled *Kahan v. Weisz et al.*, Index No: 519589/2024 (the "***First Action***"). In that action, Kahan sought to compel Yecheskel Weisz and Shai Weisz to arbitration to determine the ownership of the $1.6 million.

46. In that action, in the form of interim relief, Kahan requested that the State Court transfer the $1.6 million out of Riverside and have the State Court hold such funds.

47. The Weisz family thought that transferring the monies out of Riverside and into the State Court was wise as the monies would be safer with the Court than Riverside. Based on Kahan's request to transfer the funds to the State Court, Weisz did not enter any opposition.

48. Instead of transferring the funds to the State Court, however, the State Court ordered the money be transferred to the escrow account of Kahan's counsel - Defendant Cohen Tauber, under the same terms as Riverside.

49. Pursuant to an order entered in the First Action on July 22, 2024, the $1.6 million was transferred from Riverside to the escrow account of Defendant Cohen Tauber.

50. On July 23, 2024, Stephen Wagner, Esq. (of Cohen Tauber) sent an email to various parties in which he confirmed that the $1.6 million would not be transferred out of Cohen Tauber's escrow account until such time as Kahan and Yecheskel Weisz agree to release such or the parties are otherwise ordered to do so by the Jewish Rabbinical Court, the same agreement as it existed with Riverside. See email attached as **Exhibit E**.

51. The case was marked off the calendar due to Mr. Wagner's lack of service, and the Debtor has been advised that Mr. Wagner confirmed to counsel Yecheskel Weisz and Shai Weisz (Andrea Caruso, Esq. of Schwartz Sladkus Reich Greenberg Atlas LLP) that despite the dismissal, Mr. Wagner would continue to hold the money in escrow. However, the case being marked off meant Mr. Wagner was supposed to return the funds to Riverside, as he was only holding the money per the order pending the motion hearing.

*(ii)    The Second Action*

52. On a Friday afternoon, two weeks later, Kahan filed a lawsuit against Defendant Cohen Tauber, demanding that the escrow funds be released to Kahan.

53. Indeed, on August 30, 2024, Kahan commenced a second action in the State Court by Order to Show Cause titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC*, Index No. 523487/2024 (the "**Second Action**").

54. In the Second Action, without notice to any other party other than Cohen Tauber, Kahan sought to have the $1.6 million turned over to him. The Weisz' were improperly excluded from this action.

55. Shockingly, Defendant Cohen Tauber filed an affirmation stating it had no opposition to Kahan's request.

56. Because of that affirmation, the State Court entered an order directing that the $1.6 million of Debtor funds held by Cohen Tauber be turned over to Kahan. *See* Order dated August 30, 2024 annexed hereto as **Exhibit F**.

57. Tellingly, Cohen Tauber as the escrow agent (and Kahan's former counsel) failed to notify Weisz as it was obligated to about the lawsuit, the relief requested therein, and the decision by Cohen Tauber to put in an affirmation of no opposition to the relief requested.

58. In other words, Kahn's former lawyer who was serving as escrow agent willfully participated in some sort of scheme to direct the funds to its former client – Kahan, with full knowledge that a dispute existed over its ownership between the parties. That is troubling at best.

59. Ultimately, the State Court ordered the transfer of funds to Kahan, again in the form of interim relief, which was initially unnoticed until Mr. Weisz's team discovered the lawsuit while searching court dockets.

60. Upon learning of such order, the Debtor commenced an emergency chapter 11 on September 2, 2024 and filed a Notice of Suggestion of Bankruptcy on the State Court docket in the Second Action.

61. Additionally, counsel to Yecheskel Weisz and Shai Weisz at around 7:00 am (ET) on September 3, 2024 filed an Order to Show Cause with supporting papers to have the Court's August 30, 2024 order vacated. Apparently, there was a need by Defendant Kahan to have immediate access to the Debtor's funds as Defendant Kahan claimed to need the money for a time of the essence closing. Again, these funds are not Defendant Kahan's. Rather such belongs to the Debtor as clearly indicated in the Termination Agreement.

62. To seemingly avoid the Order to Show Cause which has been filed, Kahan immediately thereafter filed a Notice of Discontinuance in the Second Action in an attempt to cut off Yecheskel Weisz and Shai Weisz's argument that the monies belonged to the Debtor.

63. The Court Order in the second action, again was in the form of interim relief and therefore became invalid upon the filing of the Notice of Discontinuance.

*(iii)    The Third Action*

64. Even more bizarre, upon filing the Notice of Discontinuance, on September 3, 2024, Kahan filed a third action by Order to Show Cause in the State Court titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC, Yecheskel Weisz and Shai Weisz*, Index No. 523694/2024 (the "**Third Action**"). This time, despite naming the Weisz', Kahan only gave notice to Cohen Tauber.

65. Again, without any notice to Weisz or the Debtor, the State Court entered an order which seems to be inconsistent with August 30, 2024 order entered in the Second Action. See Order dated September 3, 2024 annexed hereto as **Exhibit G**.

66. On September 4, 2024, the State Court in the Third Action entered an Order to Show Cause which prevents Defendants Haim Kahan and Cohen Tauber from transferring the funds and /or using such funds to the extent that the transfer already took place. A copy of that

order (the "**State Court Stay Order**") is annexed hereto as **Exhibit H**. Such Order supersedes the previous orders to show cause entered in the State Court.

67. Counsel for the Weis' again filed an Order to Show Cause seeking the stay of the third order which was ultimately signed by the Court.

68. On September 4, 2024, the Debtor commenced this adversary proceeding in this Court and filed an order to show cause seeking to prevent Cohen Tauber from transferring the funds out of its escrow account.

69. On September 5, 2024, this Court entered an order in this adversary proceeding which in substance provided that "[t]he parties are directed to preserve the status quo with respect to the use of the funds at issue . . ." Such order (the "**Chapter 11 Adversary Stay Order**") was entered as Docket No. 7 in this adversary proceeding and is annexed hereto as **Exhibit I**.

70. Despite this Court's entry of the Chapter 11 Adversary Stay Order and the State Court's entry of the State Court Stay Order, Cohen Tauber transferred the $1.6 million out of its escrow account via an ACH transfer (upon information and belief). Mr. Wagner, knowing quite well that the funds were property of the Debtor's estate, had various opportunities to stop the ACH transfer, yet he refused to do so.

71. While the Debtor has reason to believe that such monies were transferred to Defendant Progressive, such has not been confirmed as the Defendants are refusing to provide the information regarding the transfer.

72. In fact, Mr. Kahan, despite telling the Court he needed the money for a closing, has denied knowledge of the whereabouts of the funds, which he personally initiated the ACH payment of from Cohen Tauber's escrow account.

## COUNT ONE (INJUNCTIVE RELIEF / TEMPORARY RESTRAINING ORDER)
### (Against Kahan and Progressive)

73. Plaintiff repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

74. Plaintiff seeks an injunction under section 105(a) of the Bankruptcy Code, for an Order:

(a) directing Defendant Haim Kahan to immediately cease and desist from any and all action to obtain possession of the $1.6 million t, and

(b) enjoining Defendant Progressive from turning over the $1.6 million to Kahan.

75. Relief under section 105(a) of the Bankruptcy Code is proper in a Chapter 11 case when necessary to protect a debtor's ability to effectively reorganize and preserve property of the debtor's estate.

76. If Defendants are not enjoined, Debtor will likely suffer irreparable harm and its reorganization efforts will be threatened, including but not limited to the risk that the Debtor's main asset – the $1.6 million – will be released to Kahan and the Debtor will be forced to claw back such monies from Kahan.

77. The likelihood of irreparable harm to the Debtor in the absence of injunctive relief far outweighs any harm to Defendants. Defendants will suffer little or no harm if they are enjoined until further order of the court.

78. Debtor has a substantial likelihood of reorganizing if Defendants are enjoined.

## COUNT TWO (DECLARATORY JUDGMENT)
### (Against all Defendants)

79. Plaintiff repeats and realleges paragraphs 1 through 78 hereof, as if fully set forth herein.

80. Plaintiff seeks an order pursuant to section 105(a) of the Bankruptcy Code declaring that the $1.6 million at issue is property of the Debtor's estate.

81. The declaratory judgment is warranted because the Defendants have to date refused to turn over the $1.6 million in the absence of a court order.

82. The declaratory judgment is further warranted because Defendants Cohen Tauber and Kahan have already demonstrated willingness to disregard this Court's Chapter 11 Adversary Stay Order as well as the State Court Stay Order.

### COUNT THREE (CONVERSION)
### (Against Kahan and Progressive)

83. Plaintiff repeats and realleges paragraphs 1 through 82 hereof, as if fully set forth herein.

84. The Debtor is and was legally entitled to the $1.6 million.

85. Such funds are specific and identifiable funds and are owned by the Debtor.

86. The Debtor has an immediate right of possession to such funds.

87. Debtor has grave concerns that such monies, despite the Chapter 11 Adversary Stay Order and the State Court Stay Order, have already been squandered by Defendants Kahan and Progressive.

88. Defendants Kahan and Progressive were not authorized by this Court to access the funds and to use for their own benefit.

89. Therefore, Defendants Kahan and Progressive have converted the $1.6 million and those monies must be returned to the Debtor as a disgorgement of ill-gotten gains.

### COUNT FIVE (FRAUDULENT CONVEYANCE PURSUANT TO NYDCL § 273)
### (Against Kahan and Progressive)

90. Plaintiff repeats and realleges paragraphs 1 through 89 hereof, as if fully set forth herein.

91. Debtor has good cause to believe that Defendants Kahan and Progressive have diverted the $1.6 million of Debtor's funds to themselves.

92. Debtor became further insolvent as a result of the diversion of such, and/or the diverted $1.6 million payment while the Debtor was insolvent.

93. Defendants' receipt of the $1.6 million from Defendant Cohen Tauber was without fair consideration.

94. By virtue of the foregoing, pursuant to 11 U.S.C. § 544(b) and NYDCL § 273, Plaintiff is entitled to a judgment avoiding the fraudulent transfer of $1.6 million and awarding Plaintiff damages in a sum to be determined at trial.

### COUNT SIX (FRAUDULENT CONVEYANCE PURSUANT TO NYDCL § 276)
### (Against Defendants Kahan and Progressive)

95. Plaintiff repeats and realleges paragraphs 1 through 94 hereof, as if fully set forth herein.

96. Debtor has good cause to believe that Defendants Kahan and Progressive had actual intent to hinder, delay, or defraud the present or future creditors of the Debtor when they accepted the $1.6 million of Debtor property.

97. By virtue of the foregoing, pursuant to 11 U.S.C. § 544(b) and NYDCL § 276, Plaintiff is entitled to a judgment avoiding the $1.6 million fraudulent transfer and awarding Plaintiff damages in a sum to be determined at trial.

### COUNT SEVEN (ATTORNEYS' FEES PURSUANT TO NYDCL § 276-a)
### (Against all Defendants)

98. Plaintiff repeats and realleges paragraphs 1 through 97 hereof, as if fully set forth herein.

99. On information and believe, the $1.6 million transfer from Defendant Cohen Tauber to Defendants Kahan and / or Progressive were made with the actual intent to hinder, delay, or defraud the present or future creditors of the Debtor.

100. By virtue of the foregoing, pursuant to 11 U.S.C. § 544(b) and NYDCL § 276-a, Plaintiff is entitled to a judgment in the amount of the attorney's fees and expenses it incurs in connection with this action.

### COUNT EIGHT (VIOLATION OF 11 U.S.C. § 541 and Turnover Per 11 U.S.C. § 542)
### (Against Kahan and Progressive)

101. Plaintiff repeats and realleges paragraphs 1 through 100 hereof, as if fully set forth herein.

102. Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

103. The Debtor has both a legal and equitable interest in the $1.6 million and those funds are in fact property of the Debtor's estate.

104. Therefore, pursuant to 11 U.S.C. § 541(a), the $1.6 million is property of the Debtor's estate.

105. The $1.6 million, being property of the Debtor's estate pursuant to 11 U.S.C. § 541(a), is required to be returned to the Debtor pursuant to 11 U.S.C. § 542.

### COUNT NINE (VIOLATION OF 11 U.S.C. § 362 (Automatic Stay)
### (Against All Defendants)

106. Plaintiff repeats and realleges paragraphs 1 through 105 hereof, as if fully set forth herein.

107. Each of the Defendants were advised by written notice that the $1.6 million is property of the Debtor's estate.

108. The Termination Agreement itself clearly states that the $1.6 million belongs to the Debtor.

109. Despite such warnings, the Defendants chose to go ahead with their scheme to transfer Debtor property.

110. Such transfer was deliberate and a clear violation of the automatic stay.

[remainder of page intentionally left blank]

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) directing Defendant Haim Kahan to immediately cease and desist from any and all action to obtain the $1.6 million;

(b) enjoining Defendant Progressive Real Estate Agency LLC from turning over the $1.6 million to Kahan;

(c) entering a declaratory judgement that the $1.6 million is property of the Debtor's estate;

(d) requiring that such $1.6 million be immediately turned over to the Debtor;

(e) granting attorney's fees and costs;

(f) determining that the Defendants have violated the automatic stay and awarding damages in an amount to be determined at trial; and

(g) granting such other and further relief as the Court deems just and proper.

Dated: September 29, 2024

Respectfully submitted,

**A.Y. STRAUSS LLC**

By: ___/s/ Eric H. Horn___
Eric H. Horn, Esq.
Eva Thomas, Esq. (*pro hac vice* to be submitted)
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0217

*Attorneys for Plaintiff*