**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0217

*Proposed Counsel to the Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>288 4TH LLC,<br><br>      Debtor. | Chapter 11<br><br>Case No. 24-43626-ess |
| 288 4TH LLC,<br><br>      Plaintiff,<br><br>v.<br><br>HAIM KAHAN, COHEN TAUBER SPIEVACK & WAGNER P.C., and PROGRESSIVE REAL ESTATE AGENCY LLC,<br><br>      Defendants. | Adv. P. No. 24-01087 |

**OBJECTION TO HAIM KAHAN'S MOTION TO DISMISS**

288 4th LLC, debtor and debtor-in-possession herein (the "***Debtor***" or the "***Plaintiff***"), and as plaintiff in the above-captioned adversary proceeding, hereby objects to the motion to dismiss of Haim Kahan [Adv. Docket No. 14] (the "***Motion***"), and respectfully states as follows:

1

# FACTUAL BACKGROUND

## A. General Background

1. On September 2, 2024, (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") with the United States Bankruptcy Court for the Eastern District of New York (the "***Bankruptcy Court***").

2. The Debtor continues in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee, examiner, or statutory committee has been appointed.

4. The Debtor is 100% owned by Perl Weisz.

5. On September 4, 2024, the Debtor commenced the above-captioned adversary proceeding (the "***Adversary Proceeding***") by filing a complaint [Adv. P. Docket No. 1].

6. On September 29, 2024, the Debtor filed an amended complaint [Adv. P. Docket No. 16] (the "***Amended Complaint***").

## B. Weisz Family's Business Dealings with Chaim Kahan

7. The Weisz family has significant tortured history with Kahan, and engaged in four separate real estate deals with Kahan throughout 2022.

8. Yecheskel Weisz was introduced to Kahan as someone who claimed to have significant cash reserves to invest in real estate. Based on that assumption and some due diligence, the Weiszes engaged in business transactions with Kahan.

9. Despite Kahan holding himself out as a real estate expert and closer, each of the deals that the Weiszes worked with Kahan on fell apart. Importantly, the deals fell apart based on Kahan failing to provide the necessary funds or otherwise satisfy his obligations at the moment when those funds were required to close the transaction.

10. By way of example, one of the deals worked on with Kahan fell apart when Kahan failed to attend a "time of the essence" closing, which resulted in the release of a $1 million deposit for an $11 million property. As a result of that deal falling apart, Kahan commenced an action in New York state court (*525 Park Williamsburg LLC v. 525 Park LLC*, Index No. 521411/2023 – NYS Supreme Court, Kings County) seeking specific performance from the seller. Based on Kahan's failure to close, that case was dismissed. Ultimately, 525 Park Williamsburg LLC (Kahan's entity) ended up in bankruptcy court and is being heard by Judge Stong in the chapter 11 case titled *In re 525 Park Williamsburg LLC*, Case No. 24-40228-ess.

11. Other deals between Kahan and the Weiszes ended in similar fashions where the parties would get close to closing and Kahan would default on his obligations. Simply stated, such is Kahan's *modus operandi*.

12. The issues at play here are no different and fall squarely within Kahan's behavioral pattern.

C. **The Origin of the $1.6 Million at Issue**

13. This case is all about recovering the $1.6 million of the Debtor's property that was wrongfully transferred.

14. That $1.6 million arose from a $2 million deposit that was posted by the Debtor for the purchase of a particular property. Indeed, pursuant to a certain purchase agreement dated as of November 4, 2022 between Crown 286 4th LLC and 2123 Denton LLC, as sellers, and the Debtor as buyer (the "***Purchase Agreement***") pursuant to which the Debtor was to purchase the property located at 288 4th Avenue, Brooklyn, New York (the "***Property***"), the Debtor posted a $2 million contract deposit.

3

15. Because Kahan failed to live up to his obligations, that deal fell apart and the Debtor was at risk of losing its full $2 million deposit.

16. In an effort to avoid a full loss, the Debtor and Crown 286 4th LLC and 2123 Denton LLC (Sellers) ultimately entered into an agreement by which the Debtor would forfeit $400,000 as opposed to the full $2 million. This agreement was memorialized in the Termination Agreement.

17. The returned funds are the subject of this Adversary Proceeding.

**D.    Kahan's Relationship to the Debtor**

18. As noted above, the Debtor is solely owned by Perl Weisz. Kahan has no equity interest in the Debtor.

19. What Kahan and the Debtor did agree to is that if the deal to purchase the Property closed and was ultimately flipped for a profit, such profit would be split 50/50.

20. While it is true that Kahan did provide the Debtor with the $2 million deposit, such monies always belonged to the Debtor. That $2 million was the price of admission for Kahan to participate in the ultimate upside via the 50/50 flip.

21. Kahan's failure to provide remaining funds for closing as he was obligated to ultimately led to the demise of this deal.

22. As a result, Debtor lost the deal, as well as the ability to flip it, and the contract was terminated, resulting in a Termination Agreement dated as of November 4, 2022. *See* Termination Agreement attached as **Exhibit A**.

23. Pursuant to that Termination Agreement, the seller agreed to release all claims and return $1.6 million to Debtor, and retain $400,000. *See id*.

24. Following the entry of the Termination Agreement, a dispute arose between the Weisz family and Kahan as to ownership of the $1.6 million returned deposit.

25. While the dispute was ongoing, both the Weisz family and Kahan agreed that the money was to be placed in escrow with Riverside Abstract Inc. ("***Riverside***"), with an agreement that it would not be released until both parties agree or a rabbinical court decides its fate.

26. The money remained with Riverside for two years without any agreement or determination as to the money.

27. Putting aside the Weisz family and Kahan dispute for the moment, it is important to note that the $1.6 million belongs to neither the Weisz family nor Kahan. It belongs to the Debtor and its estate – plain and simple. In fact, the Termination Agreement clearly states that the $1.6 million is property of the Debtor. Indeed, the first Whereas clause provides as follows:

> WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**").

Exhibit A, Termination Agreement at 1st Whereas Clause.

Purchaser is defined in the Termination Agreement as the Debtor. Indeed, the Termination Agreement provides in the Preamble as follows: "**288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304, Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**")". Exhibit A, Termination Agreement at Preamble.

28. As further evidence that the $1.6 million belongs to the Debtor is provided for further in the Termination Agreement as follows: "The Parties mutually authorize and direct the Escrow Agent to disburse $400,000.00 of the Down Payment to Sellers by wire transfer to such Parties in accordance with wire instructions set forth hereinbelow and $1,600,000 to Purchaser, by wire transfer in accordance with wire instructions to be provided to the Escrow Agent by the Purchaser." Exhibit A, Termination Agreement at § 2.

29. The Weisz family has recognized that the $1.6 million belongs to the Debtor. Kahan, however, refused to accept that fact despite the overwhelming documentary evidence supporting such ownership by the Debtor.

**E.  Kahan Initiates Lawsuit after Lawsuit to Wrongfully Obtain the $1.6 million**

*(i)  The First Action*

30. On July 19, 2024, Kahan commenced his first action in New York state court (the "***State Court***") titled *Kahan v. Weisz et al.*, Index No: 519589/2024 (the "***First Action***"). In that action, Kahan sought to compel Yecheskel Weisz and Shai Weisz to arbitration to determine the ownership of the $1.6 million.

31. In that action, in the form of interim relief, Kahan requested that the State Court transfer the $1.6 million out of Riverside and have the State Court hold such funds.

32. The Weisz family thought that transferring the monies out of Riverside and into the State Court was wise as the monies would be safer with the State Court than Riverside. Based on Kahan's request to transfer the funds to the State Court, Weisz did not enter any opposition.

33. Instead of transferring the funds to the State Court, however, the State Court ordered the money be transferred to the escrow account of Kahan's counsel — Defendant Cohen Tauber, under the same terms as Riverside.

34. Pursuant to an order entered in the First Action on July 22, 2024, the $1.6 million was transferred from Riverside to the escrow account of Defendant Cohen Tauber.

35. On July 23, 2024, Stephen Wagner, Esq. (of Cohen Tauber) sent an email to various parties in which he confirmed that the $1.6 million would not be transferred out of Cohen Tauber's escrow account until such time as Kahan and Yecheskel Weisz agree to release such or the parties

6

are otherwise ordered to do so by the Jewish Rabbinical Court, the same agreement that existed with Riverside.

36. The case was marked off the calendar due to Mr. Wagner's lack of service, and the Debtor has been advised that Mr. Wagner confirmed to counsel for Yecheskel Weisz and Shai Weisz (Andrea Caruso, Esq. of Schwartz Sladkus Reich Greenberg Atlas LLP) that despite the dismissal, Mr. Wagner would continue to hold the money in escrow. However, the case being marked off meant Mr. Wagner was supposed to return the funds to Riverside, as he was only holding the money per the order pending the motion hearing.

*(ii)   The Second Action*

37. On a Friday afternoon, two weeks later, Kahan filed a lawsuit against Defendant Cohen Tauber, demanding that the escrow funds be released to Kahan.

38. Indeed, on August 30, 2024, Kahan commenced a second action in the State Court by Order to Show Cause titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC*, Index No. 523487/2024 (the "**Second Action**").

39. In the Second Action, without notice to any other party other than Cohen Tauber, Kahan sought to have the $1.6 million turned over to him. The Weiszes were improperly excluded from this action.

40. Shockingly, Defendant Cohen Tauber filed an affirmation stating it had no opposition to Kahan's request.

41. Because of that affirmation, the State Court entered an order directing that the $1.6 million of Debtor funds held by Cohen Tauber be turned over to Kahan.

42. Tellingly, Cohen Tauber as the escrow agent (and Kahan's former counsel) failed to notify Weisz as it was obligated to about the lawsuit, the relief requested therein, and the decision by Cohen Tauber to put in an affirmation of no opposition to the relief requested.

43. In other words, Kahan's former lawyer who was serving as escrow agent willfully participated in some sort of scheme to direct the funds to its former client – Kahan, with full knowledge that a dispute existed over its ownership between the parties. That is troubling at best.

44. Ultimately, the State Court ordered the transfer of funds to Kahan, again in the form of interim relief, which was initially unnoticed until Mr. Weisz's team discovered the lawsuit while searching court dockets.

45. Upon learning of such order, the Debtor commenced an emergency chapter 11 on September 2, 2024 and filed a Notice of Suggestion of Bankruptcy on the State Court docket in the Second Action.

46. Additionally, counsel to Yecheskel Weisz and Shai Weisz at around 7:00 am (ET) on September 3, 2024 filed an Order to Show Cause with supporting papers to have the Court's August 30, 2024 order vacated. Apparently, there was a need by Defendant Kahan to have immediate access to the Debtor's funds as Defendant Kahan claimed to need the money for a time of the essence closing. Again, these funds are not Defendant Kahan's. Rather such belongs to the Debtor as clearly indicated in the Termination Agreement.

47. To seemingly avoid the Order to Show Cause which has been filed, Kahan immediately thereafter filed a Notice of Discontinuance in the Second Action in an attempt to cut off Yecheskel Weisz and Shai Weisz's argument that the monies belonged to the Debtor.

48. The Court Order in the second action, again, was in the form of interim relief, and therefore became invalid upon the filing of the Notice of Discontinuance.

*(iii)     The Third Action*

49. Even more bizarre, upon filing the Notice of Discontinuance, on September 3, 2024, Kahan filed a third action by Order to Show Cause in the State Court titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC, Yecheskel Weisz and Shai Weisz*, Index No. 523694/2024 (the "**Third Action**"). This time, despite naming the Weiszes, Kahan only gave notice to Cohen Tauber.

50. Again, without any notice to the Weiszes or the Debtor, the State Court entered an order which seems to be inconsistent with the August 30, 2024 order entered in the Second Action. See Order dated September 3, 2024 annexed to the Amended Complaint as **Exhibit G**.

51. On September 4, 2024, the State Court in the Third Action entered an Order to Show Cause which prevents Defendants Haim Kahan and Cohen Tauber from transferring the funds and/or using such funds to the extent that the transfer already took place. A copy of that order (the "***State Court Stay Order***") is annexed to the *Amended Complaint* as **Exhibit H**. Such Order supersedes the previous orders to show cause entered in the State Court.

52. Counsel for the Weiszes again filed an Order to Show Cause seeking the stay of the State Court Stay Order which was ultimately signed by the Court.

53. On September 4, 2024, the Debtor commenced this adversary proceeding in this Court and filed an order to show cause seeking to prevent Cohen Tauber from transferring the funds out of its escrow account.

54. On September 5, 2024, this Court entered an order in this Adversary Proceeding which in substance provided that "[t]he parties are directed to preserve the status quo with respect to the use of the funds at issue . . ." Such order (the "***Chapter 11 Adversary Stay Order***") was

entered as Docket No. 7 in this Adversary Proceeding and is annexed to the *Amended Complaint* as **Exhibit I**.

55. Despite this Court's entry of the Chapter 11 Adversary Stay Order and the State Court's entry of the State Court Stay Order, upon information and belief Cohen Tauber transferred the $1.6 million out of its escrow account via an ACH transfer. Mr. Wagner, knowing quite well that the funds were property of the Debtor's estate, had various opportunities to stop the ACH transfer, yet he refused to do so.

56. While the Debtor has reason to believe that such monies were transferred to Defendant Progressive, such has not been confirmed as the Defendants are refusing to provide the information regarding the transfer.

57. In fact, Mr. Kahan, despite telling the Court he needed the money for a closing, has denied knowledge of the whereabouts of the funds, which he personally initiated the ACH payment of from Cohen Tauber's escrow account.

## OBJECTION

A. **The *Rooker-Feldman* Doctrine is Inapplicable**

58. In his Motion, Haim Kahan wrongfully asserts that Plaintiff's claims in the above-captioned Adversary Proceeding are barred by the *Rooker-Feldman* doctrine.

59. As a general rule, the *Rooker-Feldman* doctrine does not bar a suit by a federal court plaintiff who was not a party to the state court judgment. *See Lance v. Dennis*, 546 U.S. 459, 466 (2006) (rejecting application of *Rooker-Feldman* doctrine to non-parties who were in privity with a party); *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1234-37 (10th Cir. 2006) (concluding *Rooker- Feldman* doctrine did not bar suit by plaintiffs who were "not parties, they were not bound by the judgment, and they were neither predecessors nor successors in interest to the parties" in the state court litigation, even if they had interests identical to those of a party). The underlying

rationale for this general rule is that a federal court cannot be said to be entertaining an appeal from a state court judgment if the individual bringing the challenge is not one who could ordinarily appeal that judgment. *See Lance*, 546 U.S. at 465.

60. Here, despite Haim Kahan's acknowledgment that the $1.6 million at issue is property of the Debtor (*see* Section C, *infra*), at no time did Mr. Kahan name the Debtor in any of its State Court actions. Thus, because the Debtor was not a party to any of the State Court actions, the *Rooker-Feldman* doctrine is inapplicable.

**B.     The Plaintiff's Complaint is Not Moot**

61. In his Motion, Mr. Kahan asserts that the Adversary Proceeding should be dismissed as the relief sought therein is moot due to the fact that the funds were already released to Progressive.

62. Putting aside for the moment that such is completely contrary to what Mr. Kahan represented to this Court in his opposition to the Debtor's request for injunctive relief, injunctive relief is only a small fraction of the Debtor's Amended Complaint, to which Progressive is a party.[1]

63. Thus, the release of the of the funds to Progressive does not render the Adversary Proceeding moot.

**C.     The $1.6 Million is Property of the Estate**

64. Despite Mr. Kahan's arguments to the contrary, the $1.6 million at the heart of the Adversary Proceeding is property of the Debtor's estate. Indeed, such was acknowledged by Mr. Kahan in his Affirmation filed in the State Court wherein Kahan states:

---

[1] Defendant Haim Kahan's bankruptcy counsel filed a letter on the docket opposing the relief and saying that the Debtor would suffer no harm or prejudice if the Court did not enter the proposed order to show cause. Indeed, counsel to Mr. Kahan states: "[g]iven the nascent stage of the instant Adversary Proceeding, no prejudice will result in allowing Defendant Kahan an opportunity to fully address the allegations in the Order to Show Cause." A copy of the letter was filed as Adv. P. Docket No. 3.

> On or about August 3, 2022, Crown 286 4th Avenue LLC ("Crown") and 2123 Denton LLC ("Denton," with Crown, "Sellers") entered into a purchase and sale agreement with 288 4th LLC ("288 4th"), as purchaser, for the sale of real property located at 286-290 4th Avenue and 21-23 Denton Place, both locations in Brooklyn . . . *The transaction ultimately did not close, and one of the Sellers returned $1.6 million to 288 4th.*

*See* Kahan Affirmation annexed hereto as **Exhibit B** (emphasis added).

65. Moreover, such fact is also acknowledged in the Termination Agreement which was signed by Mr. Kahan. Indeed, the first Whereas clause provides as follows: "WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**")." Termination Agreement at 1st Whereas Clause. Purchaser is defined in the Termination Agreement as the Debtor. Indeed, the Termination Agreement provides in the Preamble as follows: "**288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304, Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**")". Exhibit A, Termination Agreement at Preamble.

66. For Mr. Kahan to assert that the $1.6 million is not property of the estate is at best disingenuous, but more aptly smacks of bad faith.

*[remainder of page intentionally left blank]*

## CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Motion be denied in its entirety and that the Court grant such other and further relief as the Court deems just and proper.

Dated: October 21, 2024

        Respectfully submitted,

        **A.Y. STRAUSS LLC**

        By:   */s/ Eric H. Horn*
        Eric H. Horn, Esq.
        290 West Mount Pleasant Avenue, Suite 3260
        Livingston, New Jersey 07039
        Tel. (973) 287-5006
        Fax (973) 533-0217

        *Attorneys for the Debtor*