**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax  (973) 533-0217

*Counsel to the Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>288 4TH LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No. 24-43626-ess |
| 288 4TH LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>HAIM KAHAN, COHEN TAUBER<br>SPIEVACK & WAGNER P.C., and<br>PROGRESSIVE REAL ESTATE<br>AGENCY LLC,<br><br>              Defendants. | Adv. P. No. 24-01087-ess |

**288 4TH LLC'S OBJECTION TO HAIM KAHAN'S  & COHEN
TAUBER SPIEVACK & WAGNER P.C.'S MOTIONS TO DISMISS**

288 4th LLC, debtor and debtor-in-possession herein (the "***Debtor***" or the "***Plaintiff***"), and

as plaintiff in the above-captioned adversary proceeding, hereby objects to the motions to dismiss

of Cohen Tauber Spievack & Wagner P.C. [Adv. Docket No. 22] (the "***Cohen Tauber Motion***")

and of Haim Kahan [Adv. Docket No. 24] (the "***Kahan Motion***" and together with the Cohen Tauber Motion, the "***Motions***"), and respectfully states as follows:

## FACTUAL BACKGROUND

### A.    General Background

1.    On September 2, 2024, (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") with the United States Bankruptcy Court for the Eastern District of New York (the "***Bankruptcy Court***").

2.    The Debtor continues in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.    No trustee, examiner, or statutory committee has been appointed.

4.    The Debtor is 100% owned by Perl Weisz.

5.    On September 4, 2024, the Debtor commenced the above-captioned adversary proceeding (the "***Adversary Proceeding***") by filing a complaint [Adv. P. Docket No. 1].

6.    On September 29, 2024, the Debtor filed an amended complaint [Adv. P. Docket No. 16] (the "***Amended Complaint***").

### B.    Weisz Family's Business Dealings with Chaim Kahan

7.    The Weisz family has significant tortured history with Haim Kahan ("***Kahan***") and engaged in four separate real estate deals with Kahan throughout 2022.

8.    Yecheskel Weisz was introduced to Kahan as someone who claimed to have significant cash reserves to invest in real estate.  Based on that assumption and some due diligence, the Weiszes engaged in business transactions with Kahan.

9.    Despite Kahan holding himself out as a real estate expert and closer, each of the deals that the Weiszes worked with Kahan on fell apart.  Importantly, the deals fell apart based on

Kahan failing to provide the necessary funds or otherwise satisfy his obligations at the moment when those funds were required to close the transaction.

10. By way of example, one of the deals worked on with Kahan fell apart when Kahan failed to attend a "time of the essence" closing, which resulted in the release of a $1 million deposit for an $11 million property. As a result of that deal falling apart, Kahan commenced an action in New York state court (*525 Park Williamsburg LLC v. 525 Park LLC*, Index No. 521411/2023 – NYS Supreme Court, Kings County) seeking specific performance from the seller. Based on Kahan's failure to close, that case was dismissed. Ultimately, 525 Park Williamsburg LLC (Kahan's entity) ended up in bankruptcy court and is being heard by Judge Stong in the chapter 11 case titled *In re 525 Park Williamsburg LLC*, Case No. 24-40228-ess.

11. Other deals between Kahan and the Weiszes ended in similar fashions where the parties would get close to closing and Kahan would default on his obligations. Simply stated, such is Kahan's *modus operandi*.

12. The issues at play here are no different and fall squarely within Kahan's behavioral pattern.

**C.    The Origin of the $1.6 Million at Issue**

13. This case is all about recovering the $1.6 million of the Debtor's property that was wrongfully transferred.

14. That $1.6 million arose from a $2 million deposit that was posted by the Debtor for the purchase of a particular property. Indeed, pursuant to a certain purchase agreement dated as of November 4, 2022 between Crown 286 4th LLC and 2123 Denton LLC, as sellers, and the Debtor as buyer (the "***Purchase Agreement***") pursuant to which the Debtor was to purchase the property

located at 288 4ᵗʰ Avenue, Brooklyn, New York (the "***Property***"), the Debtor posted a $2 million contract deposit.

15.     Because Kahan failed to live up to his obligations, that deal fell apart and the Debtor was at risk of losing its full $2 million deposit.

16.     In an effort to avoid a full loss, the Debtor and Crown 286 4ᵗʰ LLC and 2123 Denton LLC (Sellers) ultimately entered into an agreement by which the Debtor would forfeit $400,000 as opposed to the full $2 million. This agreement was memorialized in the Termination Agreement.

17.     The returned funds are the subject of this Adversary Proceeding.

**D.     Kahan's Relationship to the Debtor**

18.     As noted above, the Debtor is solely owned by Perl Weisz. Kahan has no equity interest in the Debtor.

19.     What Kahan and the Debtor did agree to is that if the deal to purchase the Property closed and was ultimately flipped for a profit, such profit would be split 50/50.

20.     While it is true that Kahan did provide the Debtor with the $2 million deposit, such monies always belonged to the Debtor. That $2 million was the price of admission for Kahan to participate in the ultimate upside via the 50/50 flip.

21.     Kahan's failure to provide remaining funds for closing as he was obligated to ultimately led to the demise of this deal.

22.     As a result, Debtor lost the deal, as well as the ability to flip it, and the contract was terminated, resulting in a Termination Agreement dated as of November 4, 2022. *See* Termination Agreement attached as **Exhibit B** to the Amended Complaint.

23.     Pursuant to that Termination Agreement, the seller agreed to release all claims and return $1.6 million to Debtor and retain $400,000. *See id.*

24.     Following the entry of the Termination Agreement, a dispute arose between the Weisz family and Kahan as to ownership of the $1.6 million returned deposit.

25.     While the dispute was ongoing, both the Weisz family and Kahan agreed that the money was to be placed in escrow with Riverside Abstract Inc. ("***Riverside***"), with an agreement that it would not be released until both parties agree or a rabbinical court decides its fate.

26.     The money remained with Riverside for two years without any agreement or determination as to the money.

27.     Putting aside the Weisz family and Kahan dispute for the moment, it is important to note that the $1.6 million belongs to neither the Weisz family nor Kahan. It belongs to the Debtor and its estate – plain and simple. In fact, the Termination Agreement clearly states that the $1.6 million is property of the Debtor. Indeed, the first Whereas clause provides as follows:

> WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**").

> Ex. B to Am. Compl.

Purchaser is defined in the Termination Agreement as the Debtor.  Indeed, the Termination Agreement provides in the Preamble as follows: "**288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304, Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**")".  Ex. B to Am. Compl.

28.     As further evidence that the $1.6 million belongs to the Debtor is provided for further in the Termination Agreement as follows:  "The Parties mutually authorize and direct the Escrow Agent to disburse $400,000.00 of the Down Payment to Sellers by wire transfer to such Parties in accordance with wire instructions set forth hereinbelow and $1,600,000 to Purchaser,

by wire transfer in accordance with wire instructions to be provided to the Escrow Agent by the Purchaser." Ex. B to Am. Compl. at § 2.

29. The Weisz family has recognized that the $1.6 million belongs to the Debtor. Kahan, however, refused to accept that fact despite the overwhelming documentary evidence supporting such ownership by the Debtor.

**E.**     **Kahan Initiates Lawsuit after Lawsuit to Wrongfully Obtain the $1.6 million**

*(i)     The First Action*

30. On July 19, 2024, Kahan commenced his first action in New York state court (the "***State Court***") titled *Kahan v. Weisz et al.*, Index No: 519589/2024 (the "***First Action***"). In that action, Kahan sought to compel Yecheskel Weisz and Shai Weisz to arbitration to determine the ownership of the $1.6 million.

31. In that action, in the form of interim relief, Kahan requested that the State Court transfer the $1.6 million out of Riverside and have the State Court hold such funds.

32. The Weisz family thought that transferring the monies out of Riverside and into the State Court was wise as the monies would be safer with the State Court than Riverside. Based on Kahan's request to transfer the funds to the State Court, Weisz did not enter any opposition.

33. Instead of transferring the funds to the State Court, however, the State Court ordered the money be transferred to the escrow account of Kahan's counsel — Defendant Cohen Tauber Spievack & Wagner P.C. ("***Cohen Tauber***"), under the same terms as Riverside.

34. Pursuant to an order entered in the First Action on July 22, 2024, the $1.6 million was transferred from Riverside to the escrow account of Defendant Cohen Tauber.

35. On July 23, 2024, Stephen Wagner, Esq. (of Cohen Tauber) sent an email to various parties in which he confirmed that the $1.6 million would not be transferred out of Cohen Tauber's

escrow account until such time as Kahan and Yecheskel Weisz agree to release such or the parties are otherwise ordered to do so by the Jewish Rabbinical Court, the same agreement that existed with Riverside.

36. The case was marked off the calendar due to Mr. Wagner's lack of service, and the Debtor has been advised that Mr. Wagner confirmed to counsel for Yecheskel Weisz and Shai Weisz (Andrea Caruso, Esq. of Schwartz Sladkus Reich Greenberg Atlas LLP) that despite the dismissal, Mr. Wagner would continue to hold the money in escrow. However, the case being marked off meant Mr. Wagner was supposed to return the funds to Riverside, as he was only holding the money per the order pending the motion hearing.

*(ii)   The Second Action*

37. On a Friday afternoon, two weeks later, Kahan filed a lawsuit against Defendant Cohen Tauber, demanding that the escrow funds be released to Kahan.

38. Indeed, on August 30, 2024, Kahan commenced a second action in the State Court by Order to Show Cause titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC*, Index No. 523487/2024 (the "***Second Action***").

39. In the Second Action, without notice to any other party other than Cohen Tauber, Kahan sought to have the $1.6 million turned over to him. The Weiszes were improperly excluded from this action.

40. Shockingly, Defendant Cohen Tauber filed an affirmation stating it had no opposition to Kahan's request.

41. Because of that affirmation, the State Court entered an order directing that the $1.6 million of Debtor funds held by Cohen Tauber be turned over to Kahan.

42.     Tellingly, Cohen Tauber as the escrow agent (and Kahan's former counsel) failed to notify Weisz as it was obligated to about the lawsuit, the relief requested therein, and the decision by Cohen Tauber to put in an affirmation of no opposition to the relief requested.

43.     In other words, Kahan's former lawyer who was serving as escrow agent willfully participated in some sort of scheme to direct the funds to its former client – Kahan, with full knowledge that a dispute existed over its ownership between the parties. That is troubling at best.

44.     Ultimately, the State Court ordered the transfer of funds to Kahan, again in the form of interim relief, which was initially unnoticed until Mr. Weisz's team discovered the lawsuit while searching court dockets.

45.     Upon learning of such order, the Debtor commenced an emergency chapter 11 on September 2, 2024 and filed a Notice of Suggestion of Bankruptcy on the State Court docket in the Second Action.

46.     Additionally, counsel to Yecheskel Weisz and Shai Weisz at around 7:00 am (ET) on September 3, 2024 filed an Order to Show Cause with supporting papers to have the Court's August 30, 2024 order vacated. Apparently, there was a need by Defendant Kahan to have immediate access to the Debtor's funds as Defendant Kahan claimed to need the money for a time of the essence closing. Again, these funds are not Defendant Kahan's. Rather such belongs to the Debtor as clearly indicated in the Termination Agreement.

47.     To seemingly avoid the Order to Show Cause which has been filed, Kahan immediately thereafter filed a Notice of Discontinuance in the Second Action in an attempt to cut off Yecheskel Weisz and Shai Weisz's argument that the monies belonged to the Debtor.

48.     The Court Order in the second action, again, was in the form of interim relief, and therefore became invalid upon the filing of the Notice of Discontinuance.

*(iii)    The Third Action*

49.    Even more bizarre, upon filing the Notice of Discontinuance, on September 3, 2024, Kahan filed a third action by Order to Show Cause in the State Court titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC, Yecheskel Weisz and Shai Weisz*, Index No. 523694/2024 (the "**Third Action**").  This time, despite naming the Weiszes, Kahan only gave notice to Cohen Tauber.

50.    Again, without any notice to the Weiszes or the Debtor, the State Court entered an order which seems to be inconsistent with the August 30, 2024 order entered in the Second Action. See Order dated September 3, 2024 annexed to the Amended Complaint as **Exhibit G**.

51.    On September 4, 2024, the State Court in the Third Action entered an Order to Show Cause which prevents Defendants Haim Kahan and Cohen Tauber from transferring the funds and/or using such funds to the extent that the transfer already took place.  A copy of that order (the "**State Court Stay Order**") is annexed to the Amended Complaint as **Exhibit H**.  Such Order supersedes the previous orders to show cause entered in the State Court.

52.    Counsel for the Weiszes again filed an Order to Show Cause seeking the stay of the State Court Stay Order which was ultimately signed by the Court.

53.    On September 4, 2024, the Debtor commenced this adversary proceeding in this Court and filed an order to show cause seeking to prevent Cohen Tauber from transferring the funds out of its escrow account.

54.    On September 5, 2024, this Court entered an order in this Adversary Proceeding which in substance provided that "[t]he parties are directed to preserve the status quo with respect to the use of the funds at issue . . ."  Such order (the "**Chapter 11 Adversary Stay Order**") was

entered as Docket No. 7 in this Adversary Proceeding and is annexed to the Amended Complaint as **Exhibit I**.

55.     These funds have been subsequently released to Defendant Progressive Real Estate Agency LLC ("***Progressive***"). However, not much else is known about the status of these funds.

56.     Moreover, despite telling the Court he needed the money for a closing, Mr. Kahan has denied knowledge of the whereabouts of the funds, though he personally initiated the ACH payment from Cohen Tauber's escrow account.

57.     Kahan filed its original motion to dismiss on September 18, 2024 [Adv. Docket No. 13] and Plaintiff filed an objection thereto on October 21, 2024  [Adv. Docket No. 18].

58.     The Court held a hearing on October 31, 2024, wherein the Court directed the parties to confer on referral to mediation and to confer on (1) compliance with the Court's order dated 9/5/2024, (2) referral to mediation or other consensual ADR process and (3) all other open issues that the parties chose to address.

59.     On December 13, 2024, counsel for Plaintiff filed a status letter advising the Court that, despite repeated efforts by Plaintiff's counsel, the parties had been unable to meet and confer about the prospect of mediation. Plaintiff further requested that the Court compel the parties to mediation and appoint a mediator to resolve all outstanding disputes in the instant case [Docket No. 24].

60.     On November 18, 2024, Cohen Tauber filed its Motion to Dismiss the Amended Complaint [Adv. Docket No. 22].

61.     Kahan filed its Motion to Dismiss the Amended Complaint on November 19, 2024, echoing many of the same arguments raised in Cohen Tauber's motion [Adv. Docket No. 24].

## **OBJECTION**

### A.  **Legal Standard**

#### a.  *Fed. R. Civ. P. 12(b)(6) Standard*

62.  When determining the sufficiency of a complaint, court must construe the pleading in the light most favorable to the plaintiff and accept plaintiff's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff need only plead facts sufficient to move the claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 545. To be sufficient, a claim need only allege "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, 281 Fed. Appx. 63, 66 (2d Cir. 2008).

#### b.  *Fed. R. Civ. P. 12(b)(1) Standard*

63.  Dismissal of a complaint under Rule 12(b)(1) is appropriate only when the district court "lacks the statutory or constitutional power to adjudicate it." *Bristol v. Town of Camden*, 669 F. Supp. 3d 135, 147 (N.D.N.Y. 2023). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* (citations omitted).

### B.  **The *Rooker-Feldman* Doctrine Does Not Bar the Complaint**

64.  Kahan and Cohen Tauber ("***Defendants***"), again, fail to establish that Plaintiff's claims in the Adversary Proceeding are barred by the *Rooker-Feldman* abstention doctrine.

65.  The *Rooker-Feldman* doctrine is a doctrine of limited application and occupies a "'narrow ground'" in our jurisprudence. *In re Blue Dog at 399 Inc.*, 540 B.R. 67, 79 (Bankr.

S.D.N.Y. 2015) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). As the Supreme Court has emphasized, "'the circuits have previously misconstrued it 'to extend far beyond [its original] contours' and consequently 'erred in ordering federal action dismissed for lack of subject-matter jurisdiction.'" *Blue Dog*, 540 B.R. at 79.

66.     To be applicable, the *Rooker-Feldman* doctrine demands that four elements be satisfied: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the federal court proceedings commenced." Ibid. (citations omitted).

67.     Moreover, as the Supreme Court has made clear, the *Rooker-Feldman* doctrine does not stop "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Saudi Basic Indus. Corp.*, 544 U.S. at 293.

68.     Here, the Court need not look beyond the first element of the *Rooker-Feldman* test. *Rooker-Feldman* requires that "the federal-court plaintiff must have lost in state court . . . ." *Blue Dog*, 540 B.R. at 79. In other words, *Rooker-Feldman* precludes "cases brought by state-court losers[,]" *Saudi Basic Indus. Corp.*, 544 U.S. at 284, and does not apply to non-parties. *See Lance v. Dennis*, 546 U.S. 459, 466 (2006) (rejecting application of *Rooker-Feldman* doctrine to non-parties who were in privity with a party); *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1234-37 (10th Cir. 2006) (concluding *Rooker- Feldman* doctrine did not bar suit by plaintiffs who were "not parties, they were not bound by the judgment, and they were neither predecessors nor successors in interest to the parties" in the state court litigation, even if they had interests identical to those of a party). The underlying rationale for this general rule is that a federal court cannot be

said to entertain an appeal from a state court judgment if the individual bringing the challenge is not th4 one who could ordinarily appeal that judgment. *See Lance*, 546 U.S. at 465.

69.     Here, that is not the case. Plaintiff was not a party to the State Court Actions. Though Kahan acknowledged that the $1.6 million at issue is the Plaintiff's property, *see* Exhibit A to the Am. Compl. (Termination Agreement), Kahan failed to name Plaintiff in any of his State Court actions. Notably, Kahan concedes that it fails to establish the first element of the *Rooker-Feldman* test, stating "Plaintiff was not actually the 'loser' in State Court. The 'loser' was the Weisz Parties . . . the Debtor was not even a party to that action." Kahan Motion at p. 7, n. 1. To be clear, *Rooker-Feldman* is concerned about whether the federal-court *plaintiff* lost in state court, *Blue Dog*, 540 B.R. at 79, not whether it was "the party 'aggrieved' by the State Cour Order . . . ." Kahan Motion at p. 7. Kahan cannot simply manipulate this test to fits it narrative. This is precisely the type of contortion that our Supreme Court has warned against and this Court should deny Kahan's efforts to extend *Rooker-Feldman* beyond its recognized limits. Because Kahan has failed to meet the first element of the conjunctive *Rooker-Feldman* inquiry, it has failed to establish that *Rooker-Feldman* applies and warrants dismissal of the Amended Complaint.

## C.     Kahan Fails to Establish that Count One of the Amended Complaint is Moot

70.     Kahan's argument that that the Adversary Proceeding should be dismissed as the relief sought therein is moot due to the fact that the funds were already released to Progressive is meritless.

71.     Bankruptcy courts are empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code under section 105(a) of the Code. 11 U.S.C. § 105(a). In appropriate circumstances, section 105(a) may be applied to enjoin actions against non-debtors. *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 89 (2d Cir.

2014). Section 105(a) "has been construed liberally to enjoin suits that might impede the reorganization process." *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988). "Second Circuit precedent holds that § 105(a) is properly used to enjoin creditors' lawsuits against third parties where the injunction plays an important part in the debtor's reorganization plan or where the action to be enjoined will have an immediate adverse economic consequence for the debtor's estate." *In re Purdue Pharm. L.P.*, 619 B.R. 38, 57 (S.D.N.Y. 2020) (citations omitted).

72. Count one of the Amended Complaint is not moot. Count one seeks an Order "(a) directing Defendant Haim Kahan to immediately cease and desist from any and all action to obtain possession of the $1.6 million, and (b) enjoining Defendant Progressive from turning over the $1.6 million to Kahan." Without this order, Kahan will undoubtedly continue seeking to collect the $1.6 million. Moreover, without the appropriate order, Progressive, an entity affiliated with Kahan, will transfer the $1.6 million who will then squander these funds to Plaintiff's detriment. While the funds may have already been transferred to Progressive, there remains a real and serious risk that Progressive will transfer the subject funds to Kahan. Because, to Plaintiff's knowledge Progressive has not yet transferred the $1.6 million to Kahan, it is not too late to enjoin Kahan from seeking and obtaining these funds. Accordingly, count one is not moot.

**D.    The $1.6 Million Remains Property of the Estate**

73. Count Two of the Amended Complaint is not moot as the $1.6 million remains property of the estate and as such, Count Two should not be dismissed.

74. The bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "It is widely recognized by courts and commentators alike that the definition of property of the estate is broad indeed." *In re Reviss*, 19-44155, 2021 WL 1821873 at * 394 (Bankr. E.D.N.Y. May 6, 2021) (Stong, J.) (finding

that debtor's personal injury case "and the prospect of proceeds of that case – became property of his estate."). "Such interests include causes of action possessed by the debtor at the time of filing . . . ." *Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d at 88 (citations omitted).

75.     It is immaterial that "the funds are the subject of an active and ongoing litigation in Kings County Supreme Court" or that neither Plaintiff nor Progressive are parties to that action. Kahan Motion at Plaintiff. 8-9. § 541(a)(1) broadly includes "*all* legal or equitable interests of the debtor in property as of the commencement of the case[,]" 11 U.S.C. § 541(a)(1), and captures "[e]very *conceivable* interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [the bankruptcy estate]." *Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d at 88. (citations omitted) (emphasis added). "And as one respected commentator has observed, 'the scope of section 541(a)(1) is so broad and all encompassing,' and 'the underlying theory of section 541(a)(1) is to bring into the estate all interests of the debtor in property as of the date the case is commenced.'" *Reviss*, 19-44155, 2021 WL 1821873 at *374 (citations omitted).

76.     By using the language in using the terms "*all* legal or equitable interests" and not qualifying these terms, §541(a)(1) clearly contemplates that the ownership of certain interests may be disputed. Moreover, §541(b) sets forth a detailed list of interests that are not property of the estate. *See* 11 U.S.C. § 541(b)(1)-(b)(10). Disputed claims are notably missing from this list. Thus, even if Kahan disputes that these funds belong to Plaintiff, these assets may still be considered property of the estate.

E.     **Plaintiff Adequately Pleads a Claim for Conversion**

77.     "[T]o establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership  or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in

question to the exclusion of the plaintiff's rights" *World Ambulette Transp., Inc. v. Kwan Haeng Lee*, 78 N.Y.S.3d 137, 140 (App. Div. 2018) (citations omitted). "Interference with a right of possession is the essence of a conversion." *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (App. Div. 1981). "Any use of such property beyond the authority which an owner confers upon a user or in violation of instructions given is a conversion." *Id.*

78. From the outset it is important to note that the Kahan's argument that the funds are disputed constitutes an improper argument in a Fed. R. Civ. P. 12(b)(6) motion because it seeks to contest the facts as alleged in the Amended Complaint. "Fed.R.Civ.P. 12(b)(6) is not an appropriate vehicle by which to decide what fundamentally are factual disputes." *Arden Way Associates v. Boesky*, 664 F. Supp. 855, 857 (S.D.N.Y. 1987). The court must accept as true all of the factual allegations set forth in Plaintiff's complaint and ought to construe the complaint liberally. *Ashcroft v. Iqbal*, 556 U.S. at 678. A motion to dismiss is not the appropriate vehicle to decide issues of fact, *Arden Way Associates v. Boesky*, 664 F. Supp. at 857, and this Court should not entertain Kahan invitation to engage in a searching review and determination of the facts asserted.

79. Here, Plaintiff has adequately pled a cause of action to recover damages for conversion. As the Amended Complaint clearly pleads, Kahan and Plaintiff agreed that the underlying $2 million deposit was the price of admission for Kahan to participate in the ultimate upside via the 50/50 flip. Amended Compl. at ¶ 34. Thus, when the underlying transaction broke down, the parties agreed that Plaintiff would receive a return of $1.6 million of the full $2 million deposit. This much was as memorialized in the Termination Agreement, which explicitly provides:

> WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**") . . . .

Ex. B to Am. Compl.

80.     Purchaser is defined in the Termination Agreement as the Debtor. *See id.*

81.     Kahan and Progressive "exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights" by failing to promptly return the $1.6 million purportedly released by Cohen Tauber to Defendant Progressive. It is of no moment that Kahan and Progressive acted pursuant to a court order that was obtained through misrepresentations. "[W]hile a party is generally privileged to commit acts which would otherwise be a . . . conversion when [it] acts pursuant to a court order which is valid or fair on its face, the actor has no such privilege when he has procured the order by means of an intentional misrepresentation to the issuing authority." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (citing *Calamia v. City of New York,* 879 F.2d 1025, 1031 (2d Cir.1989) (quoting Restatement (Second) of Torts § 266 (1965)).

82.     Kahan made serious misrepresentations in the Second Action by asserting, *inter alia,* that the $1.6 million was the sole property of Kahan. Said misrepresentations resulted in the State Court entering an order directing that the $1.6 million held by Cohen Tauber be turned over to Kahan.

83.     Further, when these funds were ultimately released, it was incumbent on Kahan and Progressive to return the $1.6 million to the rightful owners of these funds – Plaintiff. Accordingly, Kahan and Progressive have used these funds beyond the authority conferred on them by Plaintiff, *Meese*, 436 N.Y.S.2d at 500, and are liable for conversion.

F.     **The Amended Complaint Properly Pleads Claims Under § 273, § 276, U.S.C. § 544(b), and § 276-a**

84.     Plaintiff properly pleads claims under New York Debtor and Creditor Law ("*NYDCL*") § 273, § 276, U.S.C. § 544(b), and NYDCL § 276-a.

85.     "Under § 273, 'if a conveyance is made without fair consideration and the transferor is a debtor who is insolvent or will be rendered insolvent by the transfer, the conveyance is deemed constructively fraudulent.'" *Fed. Nat. Mortgage Ass'n v. Olympia Mortgage Corp.*, 792 F. Supp. 2d 645, 651 (E.D.N.Y. 2011).

86.     Here, Progressive received the $1.6 million pursuant to an improper transfer without fair consideration and said transfer caused Plaintiff to become further insolvent.

87.     Further, Plaintiff has good cause to believe that Defendants had actual intent to hinder, delay, or defraud the present or future creditors of Plaintiff when they accepted the $1.6 million of Plaintiff's property.

88.     The fact that Defendants may have acted pursuant to a court order, as is explained above, does not absolve Defendants of liability if said order was procured by improper means. *See Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d at 371.

89.     Additionally, Plaintiff has properly pled that the $1.6 million constitutes estate property. Defendants cannot improperly raise a factual dispute in a Fed. R. Civ. P. 12(b)(6) motion. *See Arden Way Associates v. Boesky*, 664 F. Supp. at 857 (explaining that "Fed.R.Civ.P. 12(b)(6) is not an appropriate vehicle by which to decide what fundamentally are factual disputes.").

90.     Thus, construing the pleading in the light most favorable to Plaintiff and accepting the factual allegations pled as true, as *Ashcroft* instructs, Plaintiff sufficiently pleads a claim under Fed. R. Civ. P. 12(b)(6). Kahan ignores that the Amended Complaint is replete with facts which provide factual support for this claim and which are expressly incorporated in this cause of action. *See* Amended Complaint ¶ 98 ("Plaintiff repeats and realleges paragraphs 1 through 97 hereof, as it fully set forth herein.")

### G. **The Amended Complaint Properly Pleads a Claim for Violation of 11 U.S.C. § 541 and Turnover Per 11 U.S.C. § 542**

91.     Plaintiff has asserted a viable cause of action for violation of 11 U.S.C. § 541 and Turnover per 11 U.S.C. § 542.

92.     The "definition of property of the estate is broad . . . ." *Reviss*, 19-44155, 2021 WL 1821873 at \*394. Indeed, subject to certain exceptions, the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

93.     As the Amended Complaint plainly alleges, Kahan and Plaintiff agreed that the underlying $2 million deposit was the price of admission for Kahan to participate in the ultimate upside via the 50/50 flip. Amended Compl. at ¶ 34. Thus, when the underlying transaction was not consummated, the parties agreed that Plaintiff would receive a return of $1.6 million of the full $2 million deposit. Thus, the $1.6 million became property of the estate pursuant to 11 U.S.C. § 541(a)(1) as of the Petition Date and must be returned to the Debtor pursuant to 11 U.S.C. § 542.

### H. **The Amended Complaint States a Cause of Action for Violation of 11 U.S.C. § 362**

94.     Plaintiff properly states a claim for violation of 11 U.S.C. § 362.

95.     The automatic stay "furthers the Bankruptcy Code's fresh start policy for debtors; it also centralizes disputes concerning the estate at least initially in the bankruptcy forum and thus ensures that the estate is not divided inefficiently or outside of the Code's priority scheme and thus protects not only debtors but also the collective creditor body." *In re Windstream Holdings, Inc.*, 19-22312 (RDD), 2020 WL 1304147, at \*5 (Bankr. S.D.N.Y. Mar. 17, 2020). Indeed, "[a]ny breach of the stay whose effects are not promptly corrected by enforcement and the imposition of sanctions to restore the status quo thus deprives debtors and their creditors of a fundamental bankruptcy protection." *Id.*

96.     Here, Defendants were promptly advised in writing that the $1.6 million is property of the Debtor's estate. Amended Compl. ¶ 107.

97.     Moreover, the Termination Agreement plainly provides that the $1.6 millions belongs to the Debtor. *Id.* ¶ 108.

98.     Notwithstanding, Defendants permitted and authorized the transfer of the $1.6 million further away from the Debtor's estate in violation of the automatic stay.

*99.*     Lastly, any argument that the violations of automatic stay are not applicable to corporate entities fails to take into account that courts have authority to sanction for violations of the automatic stay pursuant to its contempt power of Bankruptcy Code section 105(a).  *See, e.g., Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.),* 920 F.2d 183, 186-87 (2d Cir.1990).


*[remainder of page intentionally left blank]*

## CONCLUSION

100.    For the reasons set forth herein, the Debtor respectfully requests that the Motions be denied in their entirety and that the Court grant such other and further relief as the Court deems just and proper.

Dated: January 8, 2025

Respectfully submitted,

**A.Y. STRAUSS LLC**

By:   */s/ Eric H. Horn*
Eric H. Horn, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax  (973) 533-0217

*Counsel to the Debtor*
*and Debtor-in-Possession*